IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | NO. 3:19-cr-00228 |
| | ) | JUDGE RICHARDSON |
| MARCUS HOGAN | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Marcus Hogan's Motion to Suppress Evidence (Doc. No. 19, "the Motion"), to which the Government has responded (Doc. No. 24). Via the Motion, Defendant seeks to suppress evidence seized by law enforcement during a search of his home and vehicle. Defendant contends that the search warrant upon which law enforcement relied to search the house and vehicle was not supported by probable cause, so that the search and subsequent seizure of evidence violated his Fourth Amendment rights.

**I. Factual Background**

Defendant resided in a two-family duplex located on the corner of Brickmont Drive and Brickmont Court, with a single driveway facing Brickmont Drive. (Doc. No. 21-1 at 1; Doc. No. 19-1). Law enforcement officers obtained a search warrant for the property on July 29, 2019. The search warrant authorized a search of the "left side" of the duplex, its outbuildings, and "vehicles found thereon or in close proximity, which have a nexus to the location or persons present at the location." (Doc. No. 21-1 at 1)

The affidavit in support of the search warrant based probable cause upon the significant criminal history of Defendant and items uncovered during a series of three trash pulls conducted by law enforcement. During each trash pull, law enforcement removed trash bags from "a green

1

trashcan" that was located "beside the road and next to the mailbox with [Defendant's house] number on it[.]" (*Id*. at 5). The three trash pulls revealed:

> (1) On an undisclosed date in July 2019, "a marijuana stem, 5 cigarillo packages with loose tobacco, 2 clear plastic corner baggies, and two pieces of mail." (*Id*.)
>
> (2) Later in July 2019, ".5 grams of marijuana with stems and a seed, 9 cigarillo packages with loose cigarillo tobacco, 2 clear plastic corner baggies, [] a Champs Sports document with customer loyalty number on it" which Champs Sports customer service confirmed was registered to Defendant, and two pieces of mail addressed to Defendant's girlfriend who resided at the residence. (*Id*. at 6).
>
> (3) Within 72 hours of the affidavit in July 2019, "a small amount of loose marijuana with stems and seeds, 18 cigarillo packages with loose cigarillo tobacco, 7 plastic baggies (three that field tested positive for cocaine base), 1 plastic glove and a piece of another (the piece of glove filed tested positive for cocaine base) and 1 piece of mail addressed to [Defendant]. . . . Two of the torn baggies appeared to be the dealer end of the bag meaning that it was the top portion torn from the baggie after it had been packed with narcotics and then twisted and town off." (*Id*.).

The same day law enforcement obtained the search warrant, officers executed the warrant and seized a quantity of cocaine and a handgun from the residence. While searching the residence, officers recovered keys to, as it turned out, a Chevrolet Lumina[1] parked on the side of Brickmont Court outside of the residence, "around the corner from the driveway to the residence."[2] (Doc. No.

---

[1] The warrant affidavit references that officers had observed several vehicles parked around the residence during surveillance of Defendant's residence. Among those vehicles was a Chevrolet Lumina. (*Id*. at 7).

[2] Obviously, the fact the key was found during the search warrant and the location of the car are facts not included in the warrant affidavit. And "[a] probable cause review of an affidavit supporting a search warrant is limited to the information presented in the four corners of the affidavit." *United States v. Fieck*, 54 F. Supp. 3d 841, 847 (W.D. Mich. 2014). Thus, the finding of the key during the search, and the location of the car at the time of the search, are not facts relevant to a *probable cause* analysis. But they are facts relevant to whether the Chevrolet Lumina was within *the scope of the search warrant* (*i.e.*, whether it was among the "vehicles found thereon or in close proximity, which have a nexus to the location or persons present at the location"). (Doc. No. 21-1 at 1). It appears that for purposes of this Motion, Defendant does not contest that law enforcement recovered the keys to the Chevrolet Lumina during the search of Defendant's residence. (Doc. No. 19 at 3-4). Nor does Defendant contest that the Chevrolet Lumina was parked on a street near Defendant's residence. (*Id*. at 4).

2

19 at 4). Officers searched the vehicle and seized an AR-style pistol from the vehicle. Defendant now moves to suppress the evidence obtained from a search of his residence and the Chevrolet Lumina.

**II. Legal Standard**

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their . . . houses . . . against unreasonable searches and seizures . . . and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Probable cause 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019) (en banc) (citing *United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018)). In its recent en banc decision in *Christian*,[3] the Sixth Circuit instructed that probable cause should be determined "[v]iewing the 'totality of the circumstances,' *Florida v. Harris*, 568 U.S. 237, 244 [] (2013), through the 'lens of common sense,' as the Supreme Court has instructed, *id*. at 248[.]" *Id*. at 309. The court further explained:

> Time and again the Supreme Court has emphasized that [p]robable cause is not a high bar to clear. Where, as here, a magistrate has issued a search warrant based on probable cause, we do[ ] not write on a blank slate. Rather, the magistrate's probable-cause determination should be paid great deference, and we overturn that decision only if the magistrate arbitrarily exercised his or her authority. We are not permitted to attempt a *de novo* review of probable cause.

*Id*. at 311 (citations and quotation marks omitted).

---

[3] The Court finds, somewhat to its chagrin, that parties to suppression motions in this Court are not citing *Christian* even when it is applicable; they are instead drawing their Sixth Circuit authority solely from older panel opinions. Counsel would be well advised in the future to cite *Christian*, given that it was decided en banc and so recently.

3

Further, when determining whether a warrant affidavit provides factual allegations that amount to probable cause, courts should not engage "in the kind of 'hypertechnical[,] line-by-line scrutiny,' *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004), of the affidavit explicitly forbidden by the Supreme Court." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 235-36, 245 n.14 (1983)). "'[T]his kind of divide-and-conquer approach is improper,' because '[a] factor viewed in isolation is often more 'readily susceptible to an innocent explanation' than one viewed as part of a totality.'" *Id.* (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)). Thus, courts are to keep in mind that "[w]hen it comes to probable cause, 'the whole is often greater than the sum of its parts—especially when the parts are viewed in isolation.'" *Id.* (quoting *Wesby*, 138 S. Ct. at 588).

Additionally, the "'haste of a criminal investigation' under which officers often draft an affidavit supporting a search warrant" is also relevant to a probable cause analysis. *Id.* at 310. Courts should keep in mind that "police officers are mostly non-lawyers who must draft search-warrant affidavits 'on the basis of nontechnical, common-sense judgments[.]'" *Id.* (quoting *Gates*, 462 U.S. at 235-36).

Even if a search warrant is determined not to have been supported by probable cause, such that the search was in violation of the Fourth Amendment, the fruits of the search are not necessarily suppressible. Pursuant to *United States v. Leon*, 468 U.S. 897, 913 (1984), "the introduction of evidence obtained in violation of the Fourth Amendment is permitted in criminal trials when the evidence is 'obtained in the reasonable good-faith belief that a search or seizure was in accord with the Fourth Amendment.'" *United States v. Moorehead*, 912 F.3d 963, 968 (6th Cir. 2019) (quoting *Leon*, 468 U.S. at 909). A search warrant affidavit is insufficient for police to

rely upon in good-faith if it is "bare bones." But if an affidavit is not bare-bones, it is one upon which an officer can rely in good-faith. *Christian*, 925 F.3d at 312.

"[T]o be considered bare bones, an affidavit must be 'so lacking in indicia of probable cause' as to make an officer's 'belief in its existence [] objectively unreasonable.'" *Id.* (quoting *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005)). An affidavit is barebones only if it "merely 'states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" *Id.* (quoting *United States v. Washington*, 380 F.3d 236, 241 n.4 (6th Cir. 2004))). Further, "[t]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Id.* at 313 (citation and internal quotation marks omitted).

**III. Analysis**

**A. Search of the Residence**

Defendant argues that the warrant and associated affidavit fail to establish the requisite nexus between drug-trafficking and the residence for two reasons: First, he argues that "the affidavit relies almost exclusively on a 'trash pull' in which a truly miniscule amount of marijuana was allegedly discovered, as well as some bags that may have once contained cocaine . . . [that] could have been placed in the bin by anyone." (Doc. No. 19 at 5). Defendant also emphasizes that the Defendant's residence was a duplex and that the affidavit does not specify whether two trash cans were present at the residence. Second, Defendant contends that the items obtained via the trash pulls suggested only the *use* of drugs in the residence, *not trafficking* of drugs. Accordingly, Defendant maintains that the evidence obtained from the search of the residence should be suppressed.

In response, the Government asserts that the affidavit set forth facts sufficient to establish probable cause because the Sixth Circuit has held that even a single trash pull, coupled with one

piece of supporting evidence, is enough to establish probable cause. (Doc. No. 24 at 3 (citing *United States v. Abernathy*, 843 F.3d 243 (6th Cir. 2016))). Additionally, the Government argues that even if the search warrant lacked probable cause, the Court still should deny Defendant's motion based on *Leon*'s good-faith exception to the exclusionary rule.

The Court finds that the factual allegations present in the warrant affidavit support a finding of probable cause to search Defendant's residence because the factual allegations give rise to the conclusion that "a probability or substantial chance of criminal activity" occurred in Defendant's residence. *See Christian*, 925 F.3d at 311 ("Probable cause is not a high bar to clear[.]" (citation omitted)); (Doc. No. 21-1). For example, illegal drugs were discovered during each of the three trash pulls. Courts have considered even a small amount of drugs found in a trash pull to support probable cause of drug trafficking. Additionally, baggies and gloves—which, according to the affiant based on his experience, are often used in drug trafficking—were found during two of the trash pulls, and three baggies field tested positive for cocaine. These items are suggestive of drug trafficking and not merely drug use. *See United States v. Shockley*, 816 F.3d 1058, 1062 (8th Cir. 2016) (finding that the warrant affidavit provided probable cause to search the defendant's home for evidence of drug trafficking where "eight small, clear plastic sandwich bags with stretched and torn corners; a *small amount* of a green leafy substance that tested positive for THC; and eleven plastic gloves" were discovered during a trash pull) (emphasis added).

Furthermore, contrary to Defendant's contention, a sufficient connection existed between the factual allegations and Defendant's residence. During one trash pull, officers discovered Defendant's girlfriend's mail, with whom Defendant resided, as well as a document containing a Champs Sports customer loyalty number that the officers (during their investigation, prior to obtaining the search warrant) discovered was associated with Defendant. During another trash pull,

officers recovered mail addressed to Defendant as well as gloves and baggies that field tested positive for illegal drugs. *See United States v. Crawford*, 552 F. App'x 240, 247 (4th Cir. 2014) (finding that "the mail found in the trash, *i.e.*, the mail addressed to Appellant's mother, established a nexus with the location to be searched."). Although Defendant complains that the warrant affidavit did not specify that the mail was found in the same bag as the contraband, the Sixth Circuit stated that "[a]n affidavit need only present some connection, regardless of how remote it may have been . . . between the illegal activity and the place to be searched." *Christian*, 925 F.3d at 311 (citation omitted). Additionally, the warrant affidavit states that the trash bin was located beside Defendant's mailbox. Viewed through "the lens of common sense," and keeping in mind that "[w]hen it comes to probable cause, 'the whole is often greater than the sum of its parts—especially when the parts are viewed in isolation'" as the Sixth Circuit instructs courts to do, *Christian*, 925 F.3d at 311 (quoting *Wesby*, 138 S. Ct. at 588), the location of the trash bin and materials found inside establish a sufficient nexus to Defendant's residence. Therefore, the Court finds the allegations allege a factual connection to support probable cause to search the residence.

Even if the Court were to find that the warrant to search the residence was not supported by probable cause, the good-faith exception to the exclusionary rule would still defeat Defendant's motion. *See Leon*, 468 U.S. at 913. In this case, the affiant recited facts that were accumulated during a month-long investigation; thus, "it is impossible to deny that [the warrant affidavit] contains factual allegations, not just suspicions or conclusions." *Christian*, 925 F.3d at 312. Thus, this is not the type of "bare bones" affidavit upon which it would be objectively unreasonable for an officer to rely. *See Christian*, 925 F.3d at 313. Further, the "exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates" *Christian*, 925 F.3d at 313 (citing *Leon*, 468 U.S. at 916). There are no allegations of law enforcement misconduct

7

in this case. Therefore, like in *Christian*, "[t]his is a particularly egregious case to misapply the good-faith exception given the utter lack of police wrongdoing."[4] *Id*. Accordingly, the Court finds that the good-faith exception applies.

### B. Search of the Vehicle

One issue remains: whether the warrant and allegations within the warrant affidavit justify a search of the Chevrolet Lumina. Defendant argues that the warrant is overbroad in allowing the search of "vehicles found thereon or in close proximity, which have a nexus to the location or persons present at the location[,]" (Doc. No. 21-1 at 1), because the warrant "affidavit does not even try to tie the presence of vehicles parked near a home to drug trafficking[.]" (Doc. No. 19 at 10). Thus, Defendant contends the "all vehicles" clause of the warrant is lacking in probable cause, such that the fruits of the search of the Chevrolet Lumina should be suppressed.

The Government responds that "[t]he search warrant affidavit described the residence and vehicles to be searched with sufficient particularity and, as such, the warrant was not overbroad and the search of the Chevrolet Lumina was appropriate." (Doc. No. 24 at 9). Defendant did not file a reply to this argument, but the Court finds that the Government's response does not actually address Defendant's contention—*i.e.*, that the warrant affidavit needed to contain factual allegations that supported probable cause to search the vehicles in order for law enforcement to

---

[4] The Court realizes that under black-letter law, a suppression motion based on the lack of probable cause in a search warrant is decided based on the so-called four corners of the affidavit. *Fieck*, 54 F. Supp. 3d at 847 ("A probable cause review of an affidavit supporting a search warrant is limited to the information presented in the four corners of the affidavit." (citing *United States v. Coffee,* 434 F.3d 887, 892 (6th Cir. 2006)). However, *Christian*'s reliance on the lack of police wrongdoing suggests that police wrongdoing evidenced by information outside the affidavit could properly be considered in analyzing the applicability of the good-faith exception. Here, however, no such wrongdoing has even been alleged, let alone indicated by particular proffered information.

8

lawfully search a vehicle found on or in close proximity to the premises.[5] The Government does not argue (even if it *implies*) that the search warrant affidavit did not need to establish probable cause to search the Chevrolet Lumina in particular.

The Sixth Circuit has explained, albeit in an unpublished case, that "[t]he general rule is that a warrant authorizing the search of a certain premises usually includes any vehicles located within its curtilage if the particular objects of the search might be located in the vehicles." *United States v. Brown*, No. 96-5414, 1998 WL 68931, at *4 (6th Cir. Feb. 11, 1998); *cf. United States v. Thompson*, No. 95–5881, 1996 WL 428418, at *2 (6th Cir. July 30, 1996) (explaining that "a majority of the courts . . . have upheld the search of a car on the premises, even where the search of vehicles was not expressly included in the wording of the warrant[.]); *United States v. Hendricks*, No. 88–6180, 1989 WL 125653, at *1 (6th Cir. Oct. 24, 1989) (noting that the search warrant permitted a search of all vehicles discovered on the premises).

Furthermore, in dicta of reported decisions, the Sixth Circuit has generally discussed the sufficiency of warrants that provide for searches of "all vehicles" that are located around a property subject to a search warrant. *See United States v. Smith*, 510 F.3d 641, 649 (6th Cir. 2007) (observing that "[h]ad the search warrant been executed a few hours earlier, the Pontiac would have easily fallen within the ambit of the warrant, which permitted the search of 1484 Albert and all vehicles on the premises"); *United States v. Smith*, 386 F.3d 753, 763 (6th Cir. 2004) (noting that the "search warrant specifically authorized a search of the detached garage and all vehicles on the premises"). These cases suggest that a warrant authorizing a search of all vehicles on a premises

---

[5] That is, in response to Defendant's assertion of a lack of *probable cause* as to the nexus between the alleged criminal activity and the Chevrolet Lumina, the Government inaptly responded by refuting a lack of *particularity* of the description of the vehicles to be searched. An argument about probable cause cannot be countered with an argument about particularity, even if both probable cause and sufficient particularity are required for the issuance of a search warrant.

9

need not be supported by factual allegations in the affidavit that establish probable cause specifically to search a particular vehicle on the premises, as long as probable cause exists to search the premises on which the vehicle is located. *See United States v. Kleinebreil*, 966 F.2d 945, 948 n.7 (5th Cir. 1992) ("[The defendant] contested the search of his car on the grounds of lack of a warrant or probable cause. Because the warrant for the search of his home authorized the search of 'all vehicles on the curtilage thereof', the legality of the vehicle search is necessarily included in our discussion of the legality of the search of his home.").

However, the Court need not base its ruling on the above principles of law, because the Court agrees with the Government that the good-faith exception applies to prevent the exclusion of any fruits of the search—including the items found in the Chevrolet Lumina. Here, the warrant affidavit includes information detailing a month-long investigation and surveillance of Defendant's home, and specifically mentions that the Chevrolet Lumina had been observed "parked in the driveway/yard" at the premises during the investigation. (Doc. No. 21-1 at 7). As discussed above, the affidavit also reveals that there was probable cause to believe the premises, at which the Chevrolet Lumina was parked, was involved with drug trafficking. Thus, as discussed above in regards to the search of the residence, the affidavit was not so "so lacking in indicia of probable cause" as to make an officer's reliance upon it "objectively unreasonable" when executing a search of the Chevrolet Lumina. *See Christian*, 925 F.3d at 313 (quoting *Laughton*, 409 F.3d at 748). Furthermore, during the course of the search of the residence, officers discovered

the keys to the Chevrolet Lumina,[6] establishing "a nexus to the location or persons present at the location" and bringing the Chevrolet Lumina within the scope of the search warrant.[7]

Additionally, as explained above, this is not a case that contains allegations of police misconduct, that would call for implementation of the exclusionary rule in this case. *Id*. Accordingly, even if the warrant affidavit did not support a finding of probable cause to search the vehicle, the officers acted in good faith when executing the warrant that allowed for such a search. *See United States v. Keeling*, No. 3:16-CR-00127-TBR, 2017 WL 2486353, at *7 (W.D. Ky. June 8, 2017), *aff'd*, 783 F. App'x 517 (6th Cir. 2019) (holding that even if the warrant to search a premises did not encompass the search of the defendant's truck, "the good-faith exception would still permit the gun seized from the truck to be admitted against [the defendant]"). Therefore, the Court will not suppress the evidence seized from the Chevrolet Lumina.

---

[6] As noted above, Defendant does not contest that officers in fact discovered the keys to the Chevrolet Lumina during the search of Defendant's residence.

[7] As Defendant notes, the Chevrolet Lumina was not parked in Defendant's driveway during the time of the execution of the search warrant, but instead parked on "Brickmont Court, around the corner from the driveway to the residence." (Doc. No. 19 at 4). Defendant attached a photograph taken from the residence's security camera (Doc. No. 23-2), which he contends demonstrates the location of the Chevrolet Lumina around the time of the execution of the search warrant-namely, on Brickmont Court directly adjacent to Defendant's residence. From the Court's view of the photograph, considered together with the Google Maps photograph of the area filed therewith, it does not appear that the Chevrolet Lumina depicted is parked on Brickmont Court (Doc. No. 23-2 at 2). Nevertheless, the parties agree that the Chevrolet Lumina was parked on *a* street that bordered Defendant's property and, as indicated by the submission of the aforementioned photograph, Defendant's own position is that it was directly adjacent to the premises to be searched. Thus, a reasonable officer would conclude that the location of the Chevrolet Lumina fell within "close proximity" to Defendant's residence. (*See* Doc. No. 21-1 at 5; Doc. No. 19 at 4).

**IV. Conclusion**

For the above-mentioned reasons, Defendant's Motion to Suppress (Doc. No. 19) is **DENIED**.

IT IS SO ORDERED.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE